IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
1:21-CV-765

| | |
|---|---|
| THE MCCLATCHY COMPANY d/b/a THE NEWS AND OBSERVER PUBLISHING COMPANY; CAPITOL BROADCASTING COMPANY, INCORPORATED; DEMAYO LAW OFFICES, LLP; AND MARCARI, RUSSOTTO, SPENCER & BALABAN, P.C., <br><br> Plaintiffs, <br><br> v. <br><br> TOWN OF CHAPEL HILL, NORTH CAROLINA, <br><br> Defendant. | **COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |

Plaintiffs The McClatchy Company d/b/a The News and Observer Publishing Company ("N&O Publishing"); Capitol Broadcasting Company, Incorporated ("Capitol Broadcasting"); DeMayo Law Offices, LLP ("DeMayo Law Firm"); and Marcari, Russotto, Spencer & Balaban, P.C. ("Marcari Law Firm"), by and through undersigned counsel, hereby file this Complaint for Declaratory Judgment and Injunctive Relief, and in support thereof, state as follows:

## Introduction

1.     This action seeks a declaration that the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.*, does not bar a North Carolina law enforcement agency ("LEA") from releasing to the public, under applicable state laws, motor vehicle accident reports that contain the names and addresses of involved drivers ("accident reports").

2.     This Court determined earlier this year that members of the public who obtain accident reports as public records from LEAs do not violate the DPPA simply because these accident reports identify drivers by their names and addresses. *Garey v. Farrin*, No. 514 F. Supp. 3d 784, 796 (M.D.N.C.), *reconsideration denied*, 2021 WL 1124286 (M.D.N.C. March 24, 2021); *Hatch v. DeMayo*, No. 1:16cv925, 2021 WL 231245, at *8 (M.D.N.C. Jan. 22, 2021), *mot. to amend denied*, 2021 WL 1124389 (M.D.N.C. March 24, 2021).

3.     Here, Plaintiffs seek relief on similar grounds.   The police department in the Town of Chapel Hill (the "Department") has recently adopted a policy under which Plaintiffs, and other members of the public, may only receive a "public copy" of an accident report—one that redacts any "personal information," as defined in the DPPA.  To receive a "complete copy" of an accident report—one that contains the names and addresses of the

2

involved drivers and other "personal information"—the Department requires a member of the public to satisfy a DPPA exception.

4.     A live controversy exists.  Plaintiffs wish to obtain accident reports from the Department that identify drivers by names and addresses, as authorized by the North Carolina Public Records Act ("NCPRA"), N.C.G.S. § 132-1, *et seq*. and N.C.G.S. § 20-166.1(i) ("The reports made by law enforcement officers and medical examiners are public records and are open to inspection by the general public at all reasonable times.").  The Department's position, in contrast, is that the DPPA prevents it from releasing to the public accident reports that contain information the DPPA defines as "personal information."

5.     Plaintiffs' access to these accident reports, which are public law enforcement records, is integral to the exercise of their First Amendment rights.  N&O Publishing and Capitol Broadcasting routinely use information provided in accident reports to inform reporting that appears in print, broadcast, and digital formats.  Reporting of this nature often informs the public of safety issues, and information in accident reports is frequently used to supplement, and confirm the accuracy of, that gathered by reporters.  The DeMayo and Marcari law firms review these public records and introduce their services to drivers who may need the assistance of counsel to oppose aggressive

3

claims representatives from insurance companies, understand their rights, or pursue injury compensation in the courts.

6.    Plaintiffs seek a declaration that would resolve the controversy between them and the Department. Such a declaration would clarify that the DPPA does not bar LEAs like the Department from releasing to the public, pursuant to state law, accident reports that contain driver-identifying information that includes names and addresses.

7.    Such a ruling would be fully consistent with the Court's rulings in *Garey* and *Hatch*. There, this Court rejected the contention that a "chain of liability" exists under which the DPPA protects personally identifying information from the time a state DMV receives it, to when the DMV includes it in a driver's license or other document issued to a citizen, or supplies it to LEAs that later include it in accident reports available to the public as public records. *Garey*, 514 F. Supp. 3d at 796; *Hatch*, 2021 WL 231245, at * 8.

8.    This action seeks to clarify and settle that the Department does not violate the DPPA when it:

(i)    uses DMV-sourced information in preparing state-mandated accident reports that report on motor vehicle accidents; and

4

(ii)    releases such accident reports to the public under the conditions required by state law.

9.    Moreover, Plaintiffs seek preliminary and permanent injunctive relief that returns the Parties to the *status quo ante*: where the Department does not withhold accident reports from the public based on the DPPA and it returns to its pre-controversy status of compliance with the mandate that accident reports be made available to the public under the terms of the NCPRA.

## Parties

10.    N&O Publishing publishes news and information in digital and print formats.  It is a North Carolina corporation with its principal office at 421 Fayetteville Street, Suite 104-141, Raleigh, North Carolina 27601-1792. Its publications include *The News & Observer*, based in Raleigh.

11.    Capitol Broadcasting is a communications company that owns and operates television and radio stations across North Carolina.  It is a North Carolina corporation with its principal office at 2619 Western Boulevard, Raleigh, North Carolina 27606.  Its television stations include WRAL and FOX50.

5

12. The DeMayo Law Firm is registered as a North Carolina corporation with a principal office at 1211 East Morehead Street, Charlotte, North Carolina 28234.

13. The Marcari Law Firm is registered as a North Carolina corporation with a principal office at 2443 Lynn Road, Suite 208, Raleigh, North Carolina 27612.

14. Defendant Town of Chapel Hill ("Chapel Hill") is a North Carolina municipal corporation, chartered by the General Assembly of North Carolina, organized and operating under the laws of North Carolina, and located in Orange County, North Carolina. Chapel Hill is a public agency of the North Carolina government as defined by N.C.G.S. § 132-1(a) and is the custodian of records that are public records under the NCPRA.

15. Chapel Hill has, as one of its operating units, the Chapel Hill Police Department.

16. The Department is not capable of being sued because it is an operating unit of Defendant Chapel Hill.

## Venue

17. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because it arises under the DPPA. The

Case 1:21-cv-00765   Document 1   Filed 10/04/21   Page 6 of 31

Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

18.     An actual and justiciable controversy exists between the parties because the Department refuses to make available for inspection to the Plaintiffs, and other similarly situated entities and persons, accident reports that identify the names and addresses of involved drivers because it claims that the DPPA prohibits it from doing so.  Plaintiffs contend the DPPA imposes no such bar, and that its text, legislative history, and the overwhelming weight of judicial authority interpreting the DPPA demonstrate that it does not prevent the Department from complying with state law requirements to release accident reports that identify involved drivers by name and address.

19.     This Court has personal jurisdiction over defendant Chapel Hill because it exists as an entity with a principal place of governmental operation in this judicial district, and it conducts its operations in this district.

20.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because defendant Chapel Hill is located in this district.

### The DPPA's Framework

21.     The DPPA prohibits a state DMV from knowingly disclosing "personal information" to a person or entity, as part of a regulatory scheme

Case 1:21-cv-00765   Document 1   Filed 10/04/21   Page 7 of 31

that also includes (i) conditions under which such disclosures *shall* be made, and (ii) exceptions under which such disclosures *may* be made by a state DMV. 18 U.S.C. § 2721(a)-(b).

22.     Under the DPPA, "personal information":

> "means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, **but does not include information on vehicular accidents, driving violations, and driver's status**."

18 U.S.C. 2725(3) (emphasis added).

23.     Once data defined as "personal information" is obtained by a state DMV, that agency can only disclose it as prescribed by the DPPA. The central tenet of the DPPA is that after individuals supply personally identifying information to a DMV to secure an operator's permit, a vehicle title or registration, or an identification card, the DMV should be subject to some limits on how it can "disclose or otherwise make available" the information it holds. Thus, a person's otherwise widely available information—like her name and address—takes on a protected status when in the hands of a state DMV.

24.    The DPPA identifies circumstances under which a DMV "shall" disclose "personal information" it holds, and instances where it "may" make such disclosures.

25.    A state DMV "shall" disclose "personal information":

> "for use in connection with matters of motor vehicle or driver safety and theft, motor vehicle emissions, motor vehicle product alterations, recalls, or advisories, performance monitoring of motor vehicles and dealers by motor vehicle manufacturers, and removal of non-owner records from the original owner records of motor vehicle manufacturers to carry out the purposes of titles I and IV of the Anti Car Theft Act of 1992, the Automobile Information Disclosure Act (15 U.S.C. 1231 et seq.), the Clean Air Act (42 U.S.C. 7401 et seq.), and chapters 301, 305, and 321–331 of title 49[.]"

18 U.S.C. § 2721(b).

26.    Among the 14 exceptions in the Act when a DMV "may" disclose "personal information" are two provisions under which a state DMV is expressly authorized to share "personal information" on an intragovernmental basis with other agencies to assist performance of their duties.  They permit a DMV to disclose "personal information":

> "(1) For use by any government agency, including any court or law enforcement agency, **in carrying out its functions**[.]

(14) For any other use specifically authorized under the law of the State that holds the record, if such use is **related to the operation of a motor vehicle** or public safety."

18 U.S.C. § 2721(b)(1), (14) (emphases added).

**The Statutory Duty of LEAs to Investigate Accidents, Create Accident Reports and Make them Available for Inspection by the Public**

27.    In North Carolina, LEAs are required to investigate automobile accidents that are reported to them. N.C.G.S. § 20-166.1(e).

28.    When an accident occurs in a town or city, the police department of the municipality investigates it.  When it occurs outside a town or city, the State Highway Patrol or applicable sheriff's office typically investigates.  *Id.* at § 20-166.1(a).

29.    Within twenty-four hours of an automobile accident, an investigating officer must "make a written report of the accident" to be furnished to the LEA "for the area where the accident occurred."  State law requires that the North Carolina Division of Motor Vehicles ("NCDMV") make a standard crash report form available to LEAs for this purpose.  *Id.* at § 20-166.1(h).  An LEA must also forward completed accident reports to the NCDMV within ten (10) days.  *Id.* at § 20-166.1(e).

10

30. One purpose of the investigatory duties required by § 20-166.1 is to aid law enforcement officers in gathering information sufficient to enter data into the fields of an accident report. *Id.*

31. Among other components, North Carolina's accident report form has fields for identifying each driver involved in the accident, including spaces for name, address, and license number. An officer also must include the cause of the crash and the conditions that prevailed at the time of the accident. *Id.* at § 20-166.1(h).

32. Police officers utilize multiple sources in accident investigations to gather information to complete an accident report, including but not limited to (i) review of a driver's license, (ii) accessing a DMV database, (iii) oral reports of drivers, (iv) written information from a driver, (v) school and workplace IDs, (vi) credit cards, and (vii) other government IDs. *Garey v. Farrin*, No. 1:16cv542, 2020 WL 4227551, at *4 (M.D.N.C. July 23, 2020); *Hatch v. DeMayo*, No. 1:16cv925, 2020 WL 4719632, at *4 (M.D.N.C. Aug. 13, 2020).

33. Under North Carolina law, accident reports created by investigating officers in the Department are public records:

> "The reports made by law enforcement officers and medical examiners are public records and are open to inspection by the general public at all reasonable times."

11

N.C.G.S § 20-166.1(i).  Thus, under the NCPRA, the custodian of records in the Department has a statutory obligation to make accident reports available to the public:

> "Every custodian of public records shall permit any record in the custodian's custody to be inspected and examined at reasonable times and under reasonable supervision by any person[.]"

N.C.G.S. § 132-6(a).

34.    The NCPRA does not dictate a particular method for making accident reports available for inspection by the public.  That decision is left largely to individual LEAs.  Until quite recently, the Department elected to publish reports electronically via a public website but it could and often did also meet its statutory obligations by making such reports available for in-person inspection at a designated Department location.

35.    State law requires the Department to redact certain "identifying information" from accident reports, including Social Security and driver's license numbers.  N.C.G.S. § 132-1.10(b)(5).  However, in accord with N.C.G.S. § 14-113.20(b), names and addresses are not considered "identifying information."

12

**The Department's Policy Change Alters**
**its Historical Compliance with State Law**

36.     Until recently, the Department made its accident reports available to the public via a publicly accessible website and at its offices.

37.     Exhibit A shows an accident report released by the Department before it changed its practices.  The content of this report as released to the public by the Department reasonably reflects its prior practices regarding the information released to the public in accident reports prepared by its officers.

38.     The Department changed its practices regarding the public release of accident reports earlier in 2021.  It ended its practice of making accident reports generally available for review via a publicly accessible website and ceased providing unredacted reports to in-person requesters.  While those practices ended the ability of the law firm plaintiffs to receive these public records from the Department, it was not applied equally to media outlets.  The media entity plaintiffs were only advised in September 2021 that the policy of withholding these public records would apply to their reporters and editors who sought access to accident reports from the Department.

39.     As recently as September 16, 2021 and September 27, 2021, a reporter employed with plaintiff N&O Publishing was provided unredacted accident reports when she requested them in person.  Moreover, during the

reporter's September 16 encounter she was told that media representatives could also request accident report copies from the Department's public information department.

40. However, by phone on September 22, 2021 and in writing on September 29, 2021, the Department confirmed through counsel that the restrictions on access to accident reports reflected in its "public copy" and "complete copy" designations are intended to apply to all members of the public, including the plaintiff media entities and law firms.

41. On the website at which it previously made accident reports available to the public, the Department now includes a message that explains its position that a member of the public must provide information that is *contained in* the accident reports before (s)he/it is entitled *to review* the public records: "In order to protect the private information of citizens, the Chapel Hill Police Department requires that you enter the last name, driver's license number and state along with the insurance policy number of an involved party in order to view a crash report." *See* Figure A, below.

14



**Figure A**

*See* ([https://p2c.chpd.us/accidentdetail.aspx](https://p2c.chpd.us/accidentdetail.aspx)) (last accessed Oct. 1, 2021).

42. The Department confirms that it declines to make accident reports available to in-person requestors at its offices based only on the issuance dates of the reports. Instead, the Department will supply only its redacted, "public copy." An in-person requestor needs to satisfy a DPPA exception to review a "complete copy" that includes the information required for release under the NCPRA.

43. The Department has adopted and operates under an announced policy that is directly contrary to the North Carolina Public Records Act. In practice, these public records required to be "open to inspection by the general public at all reasonable times" are available (i) through the Town's web portal only to those individuals involved in the accident or those persons with whom

15

an involved person shares that information, or (ii) in person to those who meet an exception in the DPPA.

44.     The Department continues its refusal to make accident reports available to the public even after the North Carolina Attorney General in February 2021 declined a request from the N.C. Association of Police and Sheriff's Attorneys to revisit a 2005 Advisory Opinion stating that the DPPA had no impact on the obligation of an LEA to make accident reports available to the public for inspection.  The Advisory Opinion had confirmed that "local law enforcement agencies should fully comply with the Public Records Act in responding to an accident report request."  N.C. Att'y Gen. Advisory Opinion: Driver's Privacy Protection Act (18 U.S.C. § 2721, *et seq.*) (Feb. 9, 2005), at 2 (Exhibit B).  *See also Department of Justice Memorandum* to Kieran J. Shanahan, N.C. Department of Public Safety, from Hal F. Askins, Special Deputy Attorney General, Crime Control Section (May 7, 2013) (reaffirming Attorney General's 2005 Advisory Opinion) (Exhibit C).

45.     The Attorney General reached the same general conclusion that this Court did in *Garey* and *Hatch*: the DPPA's restrictions have no effect on the status of an accident report "as a public record from the standpoint of the local law enforcement agency."  *Id.*

16

**The Press and the Public Have Co-Extensive Rights to
Receive and Review Accident Reports**

46.     The interests of the media are necessarily intertwined with those of the public because there is no special path by which the media—as opposed to the general public—can secure a law enforcement record of an accident on a public road.  Reporters and editors acquire the information from public records *exactly as do members of the general public,* and their right to secure it would accordingly be denied if the DPPA was interpreted to bar LEAs from releasing accident reports to the public under applicable state laws.  Indeed, it is well-settled that the rights of the news media "are co-extensive with and do not exceed those rights of members of the public in general."  *In re Greensboro News Co.*, 727 F.2d 1320, 1322 (4th Cir.), *cert denied by Greensboro News Co. v. Flannery*, 469 U.S. 829 (1984).

47.     Media interests were highlighted in Congress as it considered the DPPA because access to public information about vehicle accidents is vital to the performance of the media's function to inform the public about public safety and policy issues.  The DPPA's House sponsor emphasized that "[r]eporters and private investigators will still have complete access to *all information connected with the operation of a motor vehicle.*" The Driver's Privacy Protection Act of 1993: Hearing on H.R. 3365 Before the Subcomm. on Civil

17

and Constitutional Rights of the H. Comm. on the Judiciary, 103rd Cong., 1994 WL 212698 (Feb. 4, 1994) (statement of Rep. James Moran) (emphasis added).

48. North Carolina news media outlets regularly rely on accident reports released as public records by LEAs to support and inform their newsgathering and reporting. The news media plaintiffs, as shown below, provide exemplars of the widespread use of such public records to inform the public.

49. For example, WRAL-TV reported on the state rules and regulations that apply to taxi and rideshare drivers by focusing on two accidents in which the same driver experienced health trauma from pre-existing conditions that led to serious accidents. *See* https://www.wral.com/who-s-driving-your-taxi-one-driver-two-crashes-and-a-call-for-change/19413052/ (last accessed Oct. 1, 2021) (Exhibit D). The reporter, Cullen Browder, used an accident report to describe and demonstrate the consequences for unsuspecting passengers in a December 3, 2020 segment:

18



**Figure B**

*Id.*

50.     In a story published on August 7, 2021, *The News & Observer* reported on an accident in which a pedestrian was struck and killed when she walked into the path of a car.  Availability of the accident report allowed the reporter to convey to citizens who drive on, or walk near, the roadway that the involved driver was not speeding but did not attempt to avoid the victim:



**Figure C**

*See* https://www.newsobserver.com/news/local/counties/wake-county/article253334123.html (last accessed Oct. 1, 2021) (Exhibit E).

51.     The same public access to accident reports that enables a media outlet to publish or broadcast a story that identifies an involved driver allows the law firm plaintiffs to receive and review that public record for the purpose of deciding whether to send the driver a letter that raises issues an involved driver may confront, that advises on the ways in which a lawyer might assist, and that introduces their legal services.

### The DPPA Regulates Information Held by a Particular Custodian, not "the Nature of the Information Itself"

52.     Upon information and belief, declaratory relief is also appropriate to resolve any contention that the Department is not permitted to release an accident report that contains personally identifying information just because the NCDMV asserts that the DPPA bars it from releasing the same report (or information in it) unless its "personal information" is redacted.

53.     The proposition in paragraph 52, above, highlights the following misinterpretation of the DPPA which this Court addressed and rejected in its *Garey* and *Hatch* rulings: the mistaken contention that the DPPA controls because of "the nature of the information itself," as opposed to the custodian

20

with which the information resides. *Garey*, 514 F. Supp. 3d at 794; *Hatch*, 2021 WL 231245, at *6.

54. Congress concluded that personally identifying information held at state DMVs needed protection because of the ways in which those particular custodians handled and disseminated it. Yet, Congress recognized that the same information was unprotected in other public records. That legislative distinction was based on Congressional fact-finding, as Rep. Don Edwards (who chaired the relevant House subcommittee) stated that there was "no evidence before the subcommittee that other public records are vulnerable to abuse in the same way that DMV records have been abused." Statement of Rep. Edwards, 140 Cong. Rec. H2523, 1994 WL 40035 (Apr. 20, 1994).

55. That issue of whether the DPPA would regulate this personally identifiable information in non-DMV records was highlighted in House hearings that focused on testimony from a variety of interested persons and entities including media, academia, government, victim's rights groups, civil rights groups, and business interests. Rep. Edwards emphasized that Congress made a purposeful distinction and chose to regulate access and disclosure of personally identifying information held *at a state DMV*, but also to acknowledge this same information was imbued with a "public record

21

character" that could make it subject to disclosure under state laws when *not held at a state DMV*:

> One other aspect of this legislation which received considerable attention at the subcommittee's hearings deserves further discussion: The potential precedential impact of the Driver's Privacy Protection Act on access rules applying to other kinds of public records held by State and local governments.
>
> The testimony before the subcommittee underscored the need to **maintain the public record character of this data, even if it is necessary to impose restrictions on access to some personal information <u>held by</u> State motor vehicle administrations.**
>
> There was testimony before the subcommittee that these records should remain publicly accessible in accordance with applicable State law.

Statement of Rep. Edwards, 140 Cong. Rec. H2518-01, 140 Cong. Rec. H2518-01, H2523-24. 1994 WL 140035 (Apr. 20, 1994) (emphases added).

56.     This Court adopted the same logic in *Garey* and *Hatch* that Rep. Edwards emphasized at the DPPA's passage, finding that the DPPA is a custodian-specific statute that protects information at state DMVs, but not in other locations.  Thus, in *Garey* and *Hatch*, information that may have been provided to an LEA by a state DMV to assist the LEA in carrying out its statutory functions in investigating and reporting on accidents did not later

22

occasion liability on a member of the public who received it in a publicly released accident report.

57. North Carolina has long followed this same, custodian-specific rationale that information can be private when held by one state agency but can become public when obtained and used by another governmental agency as part of its official duties. Thus, when information protected from disclosure under state law "bec[omes] part of the records of a public agency subject to the Public Records Act," that information "cease[s] to be protected." *News & Observer Pub. Co. v. Poole,* 412 S.E.2d 7, 12-13 (N.C. 1992).

58. The *Poole* rationale is regularly employed to allow intragovernmental sharing of information held by the NCDMV. For example, local taxing authorities in North Carolina receive DMV information to assist in appraising, assessing and collecting taxes. Those tax offices are then required to prepare a "tax book" collecting individual taxpayer information that is available to the public, and subject to public discussion at a public hearing. N.C.G.S. §§ 105-319, 105-321, 105-322.

59. Likewise, the State Board of Elections interacts "with the computerized drivers license records of the Division of Motor Vehicles" because the DMV is "authorized to accept voter registration applications." N.C.G.S. § 163-

23

82.12(3).   Voter registration records created with such information are public records that can be obtained from any county board of elections in an electronic form, and among other items include: voter name, county voter identification number, residential address, mailing address, sex, race, and age.   N.C. Gen. Stat. § 163-82.10(c)(1), (2).   Indeed, North Carolina's entire voter registration roll is also available to any member of the public. N.C. Gen. Stat. § 163-82.13(b).

60.    The DPPA expressly allows this intragovernmental sharing of "personal information" by a DMV so that another government agency can "carry[] out its functions."  18 U.S.C. § 2721(b)(1).  Here, an explicit governmental function of an LEA's investigating officer is to create a report about the accident that is a public record.  There is no basis under the DPPA to conclude that an LEA such as the Department may receive "personal information" to prepare accident reports that are public records, but nonetheless be barred by the DPPA from making those public records available to the public.

## Count I – Declaratory Judgment

61.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

62.    This Complaint presents an actual controversy regarding the interpretation of the DPPA because the Department refuses to provide

accident reports to the Plaintiffs as required by North Carolina law based on the erroneous contention that the DPPA bars such action.

63.    This is an action for declaratory relief under 28 U.S.C. §§ 2201(a) and 2202, seeking a declaration that

    a.  the DPPA does not bar the Department from making available to the public accident reports defined as public records under North Carolina law, in the manner proscribed by the NCPRA; and

    b.  the Department may not employ any measure that requires a member of the public to represent that his/her/its purpose or motive for requesting to review an accident report complies with or meets the terms of an exception in 18 U.S.C. § 2721(b) or any other provision of the DPPA.

64.    The declaration sought here is appropriate because the DPPA:

    a.  allows LEAs to receive and use "personal information" from a state DMV to further investigation of, and reporting on, motor vehicle accidents in carrying out their statutorily mandated functions; and

    b.  was designed to avoid conflict with public records laws and disclosure of records regarding the operation of motor vehicles, including accidents.

25

65.     The declaration sought here is consistent with the Court's earlier rulings in *Garey* and *Hatch* that the accident reports which North Carolina mandates for public release can be obtained by the public without violating the DPPA.

66.     A judicial declaration that the DPPA does not prevent the Department from releasing accident reports under applicable North Carolina law is necessary and appropriate to resolve this controversy.

## Count II – Motion for a Preliminary Injunction and Permanent Injunction

67.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

68.     The Department refuses to provide accident reports to the Plaintiffs under the terms required by North Carolina law based upon its uncertainty about whether the DPPA bars such actions.  Despite requests to alter its position, the Department is unwilling to comply with the NCPRA.

69.     The requested injunction would provide that:

a.     The DPPA does not bar the Department from making available to the public accident reports defined as public records under North Carolina law, in the manner proscribed by the

26

NCPRA, and the Department may not withhold accident reports from such availability based upon the DPPA.

b.    The Department may not employ any measure that requires a member of the public to represent that his/her/its purpose or motive for requesting to review an accident report complies with or meets the terms of an exception in 18 U.S.C. § 2721(b) or any other provision of the DPPA.

70.    The Plaintiffs are likely to succeed on the merits because:

a. this Court already has determined that accident reports that LEAs create and release as public records do not contain information that causes a member of the public to violate the DPPA by obtaining, viewing, or using it;

b. the DPPA is designed to allow intragovernmental transfers of "personal information" from DMVs to other government agencies to aid them in carrying out their functions; and

c. the LEAs carry out mandatory statutory functions in creating and releasing accident reports that specifically relate to the operation of motor vehicles.

27

71.     The Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief because the refusal by the Department to release these public records violates their First Amendment right to receive information that the government has elected to make available to the public. *Bd. of Educ. v. Pico,* 457 U.S. 853, 867 (1982) (right to receive information an "inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution").

72.     It is well-settled that the loss of First Amendment freedoms, even for limited periods of time, constitutes irreparable injury. *Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011). Moreover, monetary damages are inadequate to compensate for the loss of First Amendment freedoms, largely because the information denied to the public grows increasingly stale with each day it is withheld.

73.     The balance of the equities weighs considerably in Plaintiffs' favor because the Department is in no way harmed by complying with state laws it previously has followed and which the North Carolina Attorney General has advised it to follow.

74.     Preliminary relief is in the public interest because the information in an accident report is the "property of the people" under state law, and such

28

information is not protected from disclosure to the public by the DPPA. N.C.G.S. § 132-1(b).

75.     Plaintiffs seek a return to the status quo which has been defined as "the last uncontested status between the parties which preceded the controversy." *Pashby v. Delia,* 709 F.3d 307, 320 (4th Cir. 2013).  Here, the status quo is for the Department to cease withholding accident reports from the public based on the DPPA so that it returns to its pre-controversy status of compliance with the mandate that accident reports be made available to the public under the terms of the NCPRA.

76.     Plaintiffs are entitled to preliminary and permanent injunctive relief requiring the Department to cease withholding accident reports from the public based on the DPPA so that it returns to its pre-controversy status of compliance with the mandate that accident reports be made available to the public under the terms of the NCPRA.

**WHEREFORE**, Plaintiffs respectfully request that this Court:

a.     Declare that the DPPA does not bar the Department from making available to the public accident reports defined as public records under North Carolina law, in the manner proscribed by the NCPRA, and that the

Department may not withhold accident reports from such availability based upon the DPPA.

b. Declare that the Department may not employ any measure that requires a member of the public to represent that his/her/its purpose or motive for requesting to review an accident report complies with or meets the terms of an exception in 18 U.S.C. § 2721(b) or any other provision of the DPPA.

c. Enter a preliminary injunction and a permanent injunction compelling the Department to cease withholding accident reports from the public based on the DPPA so that it returns to its pre-controversy status of compliance with the mandate that accident reports be made available to the public under the terms of the NCPRA; and

d. Award such other relief as is just and proper.

Case 1:21-cv-00765   Document 1   Filed 10/04/21   Page 30 of 31

This the 4th day of October 2021.

FOX ROTHSCHILD LLP

/s/ Bradley M. Risinger
Bradley M. Risinger
N.C. State Bar No. 23629
brisinger@foxrothschild.com
Matthew Nis Leerberg
N.C. State Bar No. 35406
mleerberg@foxrothschild.com
Post Office Box 27525
Raleigh, North Carolina 27611
Telephone: (919) 755-8700
Facsimile: (919) 755-8800


WOMBLE BOND DICKINSON (US), LLP

/s/ Reid C. Adams, Jr.
Reid C. Adams, Jr.
N.C. State Bar No. 9669
Jonathan R. Reich
N.C. State Bar No. 41546
One West Fourth Street
Winston-Salem, North Carolina 27101
Phone: (336) 721-3600
Fax: (336) 721-3660
E-mail: cal.adams@wbd-us.com
E-mail: jonathan.reich@wbd-us.com


*Counsel for Plaintiffs*

31