IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THE MCCLATCHY COMPANY d/b/a THE NEWS AND OBSERVER PUBLISHING COMPANY; CAPITOL BROADCASTING COMPANY, INCORPORATED; DEMAYO LAW OFFICES, LLP; MARCARI, RUSSOTTO, SPENCER & BALABAN, P.C., | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | 1:21CV765 |
| v. | ) ) | |
| TOWN OF CHAPEL HILL, NORTH CAROLINA, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiffs The McClatchy Company d/b/a The News and Observer Publishing Company, Capitol Broadcasting Company, DeMayo Law Offices, LLP, and Marcari, Russotto, Spencer & Balaban, P.C. ("Plaintiffs") initiated this action for declaratory and injunctive relief against Defendant Town of Chapel Hill. (ECF No. 1 ¶¶ 1–9.) Plaintiffs seek a declaration that the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.*, does not bar a North Carolina law enforcement agency from releasing to the public, under applicable state laws, motor vehicle accident reports that contain the unredacted names and addresses of involved drivers. (*Id.* ¶ 1.)

Before the Court are cross-motions for summary judgment, (ECF Nos. 31 & 33), as well as Plaintiffs' motion for leave to file a surreply in opposition to Defendant's motion for

summary judgment, (ECF No. 42), and Plaintiffs' motion for preliminary injunction, (ECF No. 9).

For the reasons stated herein, Plaintiffs' motion for summary judgment, (ECF No. 31), will be denied; Defendant's motion for summary judgment, (ECF No. 33), will be granted; Plaintiffs' motion for leave to file a surreply, (ECF No. 42), will be denied; and Plaintiffs' motion for preliminary injunction, (ECF No. 9), will be denied as moot.

I. BACKGROUND

A. DPPA

The Driver's Privacy Protection Act holds liable parties "who knowingly obtain[], disclose[] or use[] personal information, from a motor vehicle record, for a purpose not permitted [by the statute]." 18 U.S.C. § 2724(a). The statute defines "motor vehicle record" as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." *Id.* § 2725(1).

Under the DPPA, state departments of motor vehicles ("DMVs") are generally prohibited from knowingly disclosing "personal information" to any person or entity. *Id.* § 2721(a)(1). As defined by the DPPA, "personal information" includes "an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), [and] telephone number, . . . but does not include information on vehicular accidents, driving violations, and driver's status." *Id.* § 2725(3).

However, there are exceptions under the DPPA where state DMVs may properly disclose personal information. Specifically, state DMVs may disclose personal information:

> (1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions. . . .
>
> (14) For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

*Id.* § 2721(b)(1), (14).

Further, the DPPA prohibits resale or redisclosure of that same personal information unless one of the enumerated exceptions is met: "An authorized recipient of personal information (except a recipient under subsection (b)(11) or (12)) may resell or redisclose the information only for a use permitted under subsection (b) (but not for uses under subsection (b) (11) or (12))." *Id.* § 2721(c).

### B. Accident Reporting Procedure in North Carolina

When a car accident occurs in North Carolina, law enforcement agencies ("LEAs") are required to investigate those accidents which are reported to them. N.C. Gen. Stat. § 20-166.1(e). Within twenty-four hours of the accident, an investigating officer must "make a written report of the accident" for the relevant LEA. *Id.* The North Carolina Division of Motor Vehicles ("NCDMV") provides the forms and procedures for submitting these accident reports to LEAs. *Id.* § 20-166.1(h). These standardized report forms are formally called "DMV-349s." (ECF No. 39 at 4.) The Court refers to DMV-349s as "accident reports" herein.

LEAs are permitted to use driver-identifying information (i.e., personal information) provided by the NCDMV to prepare these accident reports. (ECF No. 22-2 ¶ 4.) In practice, the Town of Chapel Hill Police Department ("CHPD") officers complete accident reports from the Mobile Computer Terminal ("MCT") in their patrol vehicles. (*Id.* ¶ 6.) MCTs

3

provide officers access to an NCDMV database.  (*Id.*)  Officers use the license plate number or name of the driver involved in an accident to query the NCDMV database, and database information then populates the accident report form.  (*Id.*)  All LEAs must forward completed accident reports to the NCDMV within ten days.  N.C. Gen. Stat. § 20-166.1(e).

The parties agree that this initial disclosure of personal information by the NCDMV (via the NCDMV database) to a LEA preparing an accident report is permissible under the DPPA exception "[f]or use by any government agency, including any . . . law enforcement agency, in carrying out its functions."  (ECF Nos. 39 at 10; 32 at 9–10); 18 U.S.C. § 2721(b)(1).

### C.    NCPRA

Under the North Carolina Public Records Act ("NCPRA"),

> [t]he public records and public information compiled by the agencies of North Carolina government, or its subdivisions are the property of the people. Therefore, it is the policy of this State that the people may obtain copies of their public records and public information free or at minimal cost unless otherwise specifically provided by law.

N.C. Gen. Stat. § 132-1(b).  A "public record" is defined as "all documents, papers, . . . electronic data-processing records, artifacts, or other documentary material," that is "made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions."  *Id.* § 132-1(a).

North Carolina law further specifies that "reports made by law enforcement officers and medical examiners are public records and are open to inspection by the general public at all reasonable times."  *Id.* § 20-166.1(i).  Similarly, the NCPRA mandates that "[e]very custodian of public records shall permit any record in the

custodian's custody to be inspected and examined at reasonable times . . . ." *Id.* § 132-6(a).

Excluded from the definition of public records are "[r]ecords of criminal investigations conducted by public law enforcement agencies, records of criminal intelligence information compiled by public law enforcement agencies, and records of investigations conducted by the North Carolina Innocence Inquiry Commission." *Id.* § 132-1.4(a). The term "records of criminal investigations" refers to "all records or any information . . . compiled by public law enforcement agencies for the purpose of attempting to prevent or solve violations of the law, including information derived from witnesses, laboratory tests, surveillance, investigators, confidential informants, photographs, and measurements." *Id.* § 132-1.4(b)(1).

D.  **Requests for Accident Reports from CHPD**

Plaintiffs are various law firms and news and media organizations. The Law Firm Plaintiffs use accident reports to advertise and "introduce their services to drivers who may need the assistance of counsel to oppose aggressive claims representatives from insurance companies, understand their rights, or pursue injury compensation in the courts," (ECF No. 1 ¶ 5), and the Media Plaintiffs "routinely use information provided in accident reports to inform reporting that appears in print, broadcast, and digital formats," (*id.*). Plaintiffs allege that until March 2021, the CHPD regularly provided accident reports that identified drivers by name and address to all in-person requesters. (*Id.* ¶ 3; ECF Nos. 31-4 ¶ 8; 32 at 7.)

In March 2021, CHPD stopped providing unredacted accident reports (i.e., those with names and addresses visible) unless the requesting party provided a basis

5

for receiving "DPPA-protected information." (ECF Nos. 32 at 7; 39 at 5.) The CHPD maintains that its policy requiring the request "provide a basis for receiving DPPA protected information" has been in place since 2012 and that any unredacted reports produced without a permissible reason under the DPPA "would not have been in accordance with CHPD's policies." (ECF No. 22-2 ¶¶ 10, 15, 17.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal citations and quotations omitted). "[I]n deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). A court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569 (citations omitted), and thus must "usually" adopt "the [nonmovant's] version of the facts," even if it seems unlikely that the moving party would prevail at trial, *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the

nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at 324.

Where, as in this case, the Court has before it cross-motions for summary judgment, the Court reviews each motion separately to determine if either party is entitled to judgment as a matter of law. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). The parties have represented that there are no issues of material fact, and this matter thus turns on interpreting the DPPA and NCPRA.

### III. DISCUSSION

#### A. Plaintiffs' Motion for Summary Judgment

Plaintiffs argue that the DPPA does not bar North Carolina LEAs from releasing to the public accident reports containing the unredacted names and addresses of involved drivers. (ECF No. 32 at 3.) Plaintiffs maintain that release of such records is mandatory under the NCPRA and specifically challenge CHPD's policy which only permits Plaintiffs to receive a "public copy" of an accident report—that is, an accident report that redacts any "personal information," as defined in the DPPA. (*Id.*) Plaintiffs argue that that they need not satisfy an exception to the DPPA in order to receive a "complete copy" of an accident report because the "DPPA is a custodian-specific statute that protects personally identifying information at state DMVs, but not in other locations such as LEAs." (*Id.*) Plaintiffs maintain that the

7

DPPA's "intention, design, and common-sense application" permits the release of accident reports under state public records laws. (*Id.* at 9.)

Defendant acknowledges that the initial disclosure of "personal information" directly from "motor vehicle records" held by NCDMV in the process of creating accident reports is permissible under the DPPA exception outlined in 18 U.S.C. § 2721(b)(1)—that is, "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions." (ECF No. 39 at 10). However, Defendant maintains that the DPPA limits redisclosures of that personal information by the CHPD because the NCDMV records are the direct source of the personal information in the CHPD accident reports. (*Id.* at 10–16.) Thus, according to Defendant, it follows that any disclosure of personal information in response to a public records request is impermissible under the DPPA. (*Id.* at 15–16.)

Both parties also make arguments under the First Amendment. Plaintiffs emphasize how the "First Amendment creates a right to receive information vital to exercising protected speech," (ECF No. 32 at 24), while Defendant argues that First Amendment allows it to protect the personal information of accident victims from disclosure, (ECF No. 39 at 24). However, the Court need not reach these constitutional arguments to resolve the instant matter.

Given that Plaintiffs heavily cite this Court's holding in *Garey v. James S. Farrin, P.C.*, 514 F. Supp. 3d 784 (M.D.N.C. 2021), *aff'd*, 35 F.4th 917 (4th Cir. 2022), the Court finds a review of its analysis in *Garey* to be a helpful starting point.[1]

---

[1] The facts of *Garey* and *Hatch v. DeMayo*, No. 16CV925, 2021 WL 231245 (M.D.N.C. Jan. 22, 2021), *aff'd sub nom. Garey v. James S. Farrin, P.C.*, 35 F.4th 917 (4th Cir. 2022), are the same, so they were consolidated on appeal at the Fourth Circuit. *See Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 920–21 (4th Cir. 2022). For the sake of clarity, the Court refers only to *Garey*.

8

In *Garey*, the defendants, a group of personal injury lawyers, acquired unredacted accident reports from LEAs and data brokers, then used that personal information (i.e., driver names and addresses) to mail unsolicited advertising materials to drivers. *Garey*, 514 F. Supp. 3d at 787. The plaintiff drivers who received those materials asserted that the law firm defendants violated the DPPA by "knowingly obtain[ing] . . . personal information, from a motor vehicle record" for an impermissible purpose. *Id.* at 791; *see also* 18 U.S.C. § 2724(a).

The Court noted the DPPA's definition of "'motor vehicle record' as a 'record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card' issued by a DMV." *Garey*, 514 F. Supp. 3d at 791 (quoting 18 U.S.C. § 2725(1)). Notably, however, the plaintiffs in *Garey* did not allege that the law firm defendants collected such accident reports from the state DMV or that the accident reports themselves were "motor vehicle records" under the DPPA.[2] *Id.* at 792. Thus, "[b]ased on the plain language of the [DPPA] and courts' subsequent interpretations of it," this Court found that "these facts alone [we]re sufficient for the Court to find that the alleged activity falls outside the DPPA's scope." *Id.*

In reaching its holding, this Court first looked to the only two Supreme Court cases concerning the DPPA, *Reno v. Condon*, 528 U.S. 141 (2000) and *Maracich v. Spears*, 570 U.S. 48 (2013). While "[n]either ultimate holding, on its own, is particularly relevant to the instant case," each case provides some helpful context to the DPPA landscape. *Garey*, 514 F. Supp. 3d at 792–94.

---

[2] It was undisputed that the law firm defendants in *Garey* obtained driver names and addresses from accident reports created by LEAs, and there were "no allegations that the accident reports are 'motor vehicle records' under the DPPA nor that the personal information was obtained from a search of a DMV database." *Garey*, 514 F. Supp. 3d at 796.

9

In *Reno*, the Supreme Court found that the DPPA "regulates the resale and redisclosure of drivers' personal information by private persons who have obtained that information from a state DMV." *Reno*, 528 U.S. at 146 (citing 18 U.S.C. § 2721(c)). This Court noted how other courts "have subsequently emphasized the phrase 'from a state DMV' to conclude that, for the DPPA to apply, '[t]he private actors themselves must have obtained the information from a state motor vehicle agency in order to be liable for disclosing it.'" *Garey*, 514 F. Supp. 3d at 792 (quoting *Ocasio v. Riverbay Corp.*, No. 06-CIV-6455, 2007 WL 1771770, at *1 (S.D.N.Y. June 19, 2007)).

Then, in *Maracich*, the Supreme Court considered the legislative history of the DPPA, highlighting Congress' concern in passing the DPPA as twofold: "first, 'a growing threat from stalkers and criminals who could acquire personal information from state DMVs' and, second, uneasiness around 'the States' common practice of selling personal information to businesses engaged in direct marketing and solicitation.'" *Id.* at 793 (quoting *Maracich*, 570 U.S. at 57). This Court in *Garey* found that "[s]uch concerns, while not necessarily exhaustive, suggest that a reading of the statute as applying only to direct DMV interactions is well-founded" and noted how various courts have subsequently "cabined the reach of the DPPA." *Id.*; *see, e.g.*, *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1259–60 (9th Cir. 2019).

This Court also examined various cases where courts have dismissed DPPA claims where no direct interaction with a state DMV was alleged, which proved fatal to such claims. *Garey*, 514 F. Supp. 3d at 794–95; *see also, e.g.*, *Siegler v. Best Buy Co.*, 519 F. App'x 604, 605 (11th Cir. 2013) ("A plain reading of the DPPA makes clear that the Act was intended to prohibit only the disclosure or redisclosure of information originating from state department of motor vehicle ('DMV') records. . . . On its face, the Act is concerned only with information disclosed,

in the first instance, by state DMVs." (footnote omitted)); *Fontanez v. Skepple*, 563 F. App'x 847, 849 (2d Cir. 2014) ("Where the personal information at issue is not obtained from a state DMV, no DPPA cause of action can be found.").

Based on this analysis, this Court in *Garey* rejected the driver plaintiffs' "chain of liability" argument that DPPA protections follow information from the time it is entered into a DMV database, through the issuance of a driver's license, then to any subsequent obtainment, disclosure, or use of information. 514 F. Supp. 3d at 796. "Such a theory extends the statutory language [of the DPPA] beyond its explicit construction." *Id.* Even further, doing so would go "against the weight of the case law and the underlying legislative goals identified by the Court in *Maracich*." *Id.* Thus, this Court determined that the lawyer defendants did not violate the DPPA when they obtained or used the personal information contained within the accident reports maintained by LEAs and that their conduct fell outside the ambit of the DPPA. *Id.*

The Fourth Circuit ultimately affirmed this Court in *Garey*—albeit on narrower grounds. *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 920, 924 (4th Cir. 2022). The Fourth Circuit's analysis focused on the fact that plaintiffs never alleged that the law firms ever "obtained any of the [p]laintiffs' personal information '*from*' any of the sources that they argue constitute 'motor vehicle record[s].'" *Id.* at 924–25. The court noted that "even assuming for the sake of argument that everything the Plaintiffs consider to be a 'motor vehicle record' is, in fact, a 'motor vehicle record,' the [p]laintiffs [could not] prevail." *Id.* at 925. It held that "the legislative history clarifies the plain text: the DPPA imposes civil liability only on a defendant who obtains personal information *from* a motor vehicle record, but not on a

11

defendant who merely obtains personal information that can be linked back to (*i.e.*, derived from) such a record." *Id.* at 927.

Moreover, it was not necessary for the court to determine whether or not a DMV database is or contains "motor vehicle record[s]" because there was no allegation by the *Garey* plaintiffs that the law firms themselves had accessed any such database. *Id.* ("So regardless of whether a given DMV database is or contains 'motor vehicle record[s],' the Defendants here did not 'obtain' any information 'from' such a database.").

Likewise, the Fourth Circuit did not make any finding as to whether an accident report itself is a "motor vehicle record." *Id.* at 927–28. Rather, the court noted this was a "difficult question" and explained:

> On the one hand, there is a non-frivolous textual argument that an accident report is a "record that pertains to a motor vehicle operator's permit," because the report indicates whether a driver's address is the same as that shown on their license. § 2725(1). Indeed, a district court in our circuit recently held that the exact same kind of accident report at issue here is a "motor vehicle record" within the meaning of the DPPA. *See Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318, 336–37 (W.D.N.C. 2020). On the other hand, several courts have limited a DPPA "motor vehicle record" to those documents held by a state DMV, which would exclude the accident reports in question. *See, e.g., Andrews*, 932 F.3d at 1259–60; *Fontanez v. Skepple*, 563 F. App'x 847, 849 (2d Cir. 2014) (unpublished) (summary order); *Siegler v. Best Buy Co. of Minn., Inc.*, 519 F. App'x 604, 605 (11th Cir. 2013) (unpublished) (per curiam). We need not and do not reach this question, because the Plaintiffs have failed to preserve this argument.

*Id.*

Notably, here, both parties agree that the personal information (namely, driver names and addresses) contained in each accident report compiled by the CHPD does in fact come from a NCDMV database. (ECF Nos. 32 at 9–10; 34 at 9.) Accepting this fact, it seems only natural for the Court to conclude that the information or records contained within that NCDMV database—which are ultimately accessed by CHPD—constitute "motor vehicle

12

record[s]" as defined by the DPPA. *See* 18 U.S.C. § 2725(1) ("'[M]otor vehicle record' means any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles."). This explicit linkage of personal information obtained directly from the NCDMV distinguishes the present matter from this Court's previous decision in *Garey*.

Under 18 U.S.C. § 2721(c), an authorized recipient of personal information under a DPPA exception—the CHPD, here—is barred from *re*disclosing that same personal information unless a DPPA exception is satisfied. To get around this language, Plaintiffs maintain that the release of an accident report prepared by the CHPD—in its unredacted form—is still within the DPPA's governmental function exception laid out in § 2724(b)(1). Specifically, Plaintiffs argue that the CHPD's release of such personal information in response to a public records request falls within the (b)(1) exception as well. (ECF No. 32 at 10–13.)

The Court agrees with Defendant that it would be "nonsensical" to characterize responding to public records requests as a "government function" under 18 U.S.C. § 2721(b)(1) given the core purpose of the DPPA. (ECF No. 39 at 23.) As another district court in the Fourth Circuit put it:

> Indeed, the fundamental purpose of the DPPA is to limit the public disclosure of personal information contained in motor vehicle records. Therefore, while an accident report may be a public record subject to unlimited disclosure with respect to information in the report that is not personal information protected under the DPPA, it would completely undermine the purpose of the DPPA if a state could simply designate a document containing personal information subject to DPPA protection as a "public record" and thereby avoid complying with its restrictions. Simply put, the very essence of the DPPA is to limit the disclosure of information that had previously been made widely available as a public record; so, with due respect to [the data mining company defendants'] argument, it would be nonsensical to hold that a permissible governmental "function" under the DPPA is to publicly disclose personal information in a "public record."

> This conclusion applies to the Crash Reports whether they are obtained from CMPD or another local law enforcement agency or the state DMV. Defendants argue that because CMPD makes Crash Reports available as "public records" without any restrictions if the reports are obtained in person, then they can make the same reports available online without complying with the DPPA. However, as discussed above, whether or not they are "public records," Crash Reports which qualify as "motor vehicle records" or which contain personal information obtained from "motor vehicle records" such as DMV records or driver's licenses are subject to the DPPA. So, to the extent that CMPD provides such records to the public without redacting that personal information or limiting disclosure only for those uses permitted by the DPPA then it is in violation of the statute.

*Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318, 346–47 (W.D.N.C. 2020) (footnotes omitted).

Accordingly, the Court must and will deny Plaintiff's motion for summary judgment. The Court finds that the CHPD's policy of releasing accident reports with personal information obtained from the NCDMV in redacted form (unless the requesting party satisfies a DPPA exception) comports with the plain language of the DPPA. 18 U.S.C. § 2721(c) ("An authorized recipient of personal information . . . may resell or redisclose the information only for a use permitted under subsection (b) . . . ."). The statute mandates that the CHPD, as an authorized recipient, may only redisclose that information if another DPPA exception is satisfied. Therefore, the Court must deny Plaintiffs' motion, the declaratory relief sought, and the corresponding request for injunctive relief.

### B.     Defendant's Motion for Summary Judgment

Moving on to Defendant Town of Chapel Hill's cross motion, the core of Defendant's argument is that the personal information contained in each accident report created by the CHPD is governed by the DPPA and that Plaintiffs are not entitled to disclosure of such information under North Carolina public records law. (ECF No. 34 at 10–14.) Specifically, Defendant argues that accident reports are *not* public records under both N.C. Gen. Stat.

§§ 132-1.4(a) and 20-166.1(j) and that such information contained within the reports is protected as personal-identifying information under N.C. Gen. Stat. § 132-1.10. (ECF No. 34 at 14–18.) Defendant last argues that disclosure is likewise barred under the DPPA itself because Plaintiffs do not satisfy any of the exceptions or permissible uses of personal information as laid out in the DPPA. (*Id.* at 21.)

The Court's analysis above addresses Defendant's contention that accident reports contain information governed by the DPPA. To reiterate, the Court agrees that the personal information obtained by the CHPD directly from an NCDMV database remains subject to DPPA protection under 18 U.S.C. 2721(c).

The Court finds that it need not reach Defendant's remaining argument under North Carolina public records law. Whether or not accident reports are public records under North Carolina law does not disturb this Court's ultimate holding: that the elements of personal information obtained directly from the NCDMV that remain in each accident report are subject to the DPPA's protection. *See* 18 U.S.C. § 2721(c) ("An authorized recipient of personal information . . . may resell or redisclose the information only for a use permitted under subsection (b) . . . ."); *see also Gaston*, 483 F. Supp. 3d at 347; *Oklahoma ex rel. Okla. Dep't of Pub. Safety v. United States*, 161 F.3d 1266, 1272 (10th Cir. 1998) ("[T]he DPPA directly regulates the disclosure of such [personal] information and preempts contrary state law."); N.C. Att'y Gen., Advisory Opinion: Driver's Privacy Protection Act (18 U.S.C. § 2721, *et seq.*) (Feb. 9, 2005) ("Therefore, federal law controls, and the State's Public Records Act is preempted by the DPPA where there is a direct conflict.").

The Court therefore grants Defendant Town of Chapel Hill's motion for summary judgment for the reasons outlined above; and declines to enjoin Defendant's policy of

15

Case 1:21-cv-00765-LCB-LPA   Document 49   Filed 02/23/23   Page 15 of 17

requiring those who request accident reports containing unredacted driver names and addresses obtained directly from the NCDMV database to satisfy a DPPA exception. Such a policy represents compliance with the DPPA and therefore Defendant is entitled to judgment in its favor as a matter of law.

### C. Plaintiffs' Motion for Leave to File a Surreply

"Parties do not have the right to file a surreply." *DiPaulo v. Potter*, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010). "Generally, courts allow a party to file a surreply only when fairness dictates based on new arguments raised in the previous reply." *Id.* "Surreplies are generally disfavored." *Olvera-Morales v. Int'l Labor Mgmt. Corp.*, 246 F.R.D. 250, 254 (M.D.N.C. 2007). "Absent new arguments, 'a surreply is unnecessary.'" *Pathfinder Software, LLC v. Core Cashless, LLC*, 127 F. Supp. 3d 531, 537 (M.D.N.C. 2015) (quoting *Adefila v. Select Specialty Hosp.*, 28 F. Supp. 3d 517, 522 n.3 (M.D.N.C. 2014)).

Here, the Court does not find that Defendant raised any new arguments in its reply brief to Plaintiffs' response to Defendant's motion for summary judgment. A surreply is thus unnecessary. The "new arguments" which Plaintiffs allege that Defendant advances in its reply brief are iterations of, or related to, its previously raised arguments. Nor does the Court find that a surreply would aid in its ultimate resolution of the issue at hand. Accordingly, Plaintiffs' motion, (ECF No. 42), will be denied.

For the reasons stated herein, the Court enters the following:

# ORDER

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Summary Judgment, (ECF No. 31), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Town of Chapel Hill's Motion for Summary Judgment, (ECF No. 33), is **GRANTED** and a judgment in Defendant's favor dismissing this action shall be filed contemporaneously with this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File a Surreply in Opposition to Defendant's Motion for Summary Judgment, (ECF No. 42), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Preliminary Injunction, (ECF No. 9), is **DENIED AS MOOT**.

This, the 23rd day of February 2023.

/s/ Loretta C. Biggs
United States District Judge